FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TERESA H.,[1]

          Plaintiff,

v.

ANDREW M. SAUL, the Commissioner of Social Security,

          Defendant.

No.   4: 19-CV-5276-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Teresa H. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) discounting Plaintiff's symptom reports and 2) improperly weighing the medical opinions. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff is not

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies the Commissioner's Motion for Summary Judgment, ECF No. 12.

### I.     Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] 20 C.F.R. 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.     Factual and Procedural Summary

Plaintiff filed a Title II and XVI application, alleging a disability onset date of February 14, 2013.[18] Her claim was denied initially and upon reconsideration.[19] A telephonic administrative hearing was held before Administrative Law Judge Glenn Meyers.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Plaintiff met the insured status requirements through September 30, 2013;
- Step one: Plaintiff had not engaged in substantial gainful activity since February 14, 2013, the alleged onset date;
- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder (bipolar disorder vs major

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 75 & 89.

[19] AR 86, 100, 115, & 129.

[20] AR 36-71.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

depressive disorder), anxiety disorder, attention deficit/hyperactivity disorder, and posttraumatic stress disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

   > [Plaintiff] is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments. She cannot have contact with the public, can work in proximity to, but not in coordination with coworkers, and can have occasional contact with supervisors. [Plaintiff] will be off task at work 10% of the time but still meet minimum production requirements, and will be absent from work one time per month.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as Marker, Hand Bander, and Photocopy Machine Operator.[21]

When assessing the medical-opinion evidence, the ALJ gave:

---

[21] AR 20-28.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- significant weight to the opinions of State agency consultants Dan Donahue, Ph.D. and John Gilbert, Ph.D.; and

- some weight to the opinion of state agency medical consultant Drew Stevick, M.D. and William Drenguis, M.D., Thomas Genthe, Ph.D., and Tae-Im Moon, Ph.D.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.  Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere

---

[22] AR 26.

[23] AR 24.

[24] AR 1.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

---

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. Analysis

**A. Plaintiff's Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[33] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[34] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with 1) Plaintiff's statements to treatment providers, 2) Plaintiff's performance on mental status examinations, 3) minimal observations of psychiatric difficulties in treatment notes, and 4) Plaintiff's activities.[35]

Though diverse, all of the reasons offered by the ALJ for discrediting the Plaintiff's mental health symptoms rest on the severity of her symptoms and their

---

[33] *Molina*, 674 F.3d at 1112.

[34] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[35] AR 24-26.

impact on her life and functioning not being consistent from report to report.[36] However, Plaintiff is correct when she characterizes bipolar disorder as a mental health impairment which presents on an episodic basis.[37] "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."[38] Without some indication the Plaintiff's bipolar symptoms were (or were not) considered as part of the ALJ's symptom-report analysis, this Court cannot say the reasons offered by the ALJ are "clear and convincing."

The ALJ found that Plaintiff inconsistently described the reasons she stopped working and that during appointments, treatment providers documented normal judgment and thought content.[39] The ALJ also noted that Plaintiff's

---

[36] *Id.*

[37] ECF No. 11 at 17-19. *See Kangali v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2011) ("[The ALJ thought the medical witnesses had contradicted themselves when they said the Plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits. There was no contradiction; bipolar disorder is episodic.").

[38] *Punzio v. Astrue*, 630 F.3d 704, 710 (9th Cir. 2011). *See also Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014 ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.").

[39] AR 24-25.

treatment providers routinely documented normal mood and affect during appointments, and that on occasion documented irritable, tearful, and/or anxious affect.[40] In addition, the ALJ noted demonstrations by Plaintiff being well groomed, cooperative attitude, and normal behavior.[41] However, at the same time, the record shows some symptoms came and went (e.g., concentration, judgment, and affect) and some symptoms persisted nearly the whole period (e.g., anxiety), while Plaintiff's diagnoses of bipolar disorder remained constant across all treatment records.[42]

---

[40] AR 25.

[41] *Id.*

[42] *See, e.g.,* AR 374, 375, & 377 (normal mood and affect); AR 382 (normal mood and affect, behavior normal, judgment and thought content normal); AR 430 (alert and oriented to person, place and time, normal mood and affect, positive for decreased concentration); AR 437-38 (alert and oriented to person place and time, normal mood and affect, judgment and thought content normal); AR 564 (speech rapid and pressured, easily distracted, insight and judgment limited due to impulsive behaviors, racing thought, and poor concentration and focus); AR 700 & 704-08 (anxious affect but range within normal limits, disheveled appearance, cooperative behavior within normal limits, fully oriented logical thought process, thought content normal) AR 748-51 (tearful; appeared depressed; speech coherent and appropriate rhythm and rate; oriented; immediate, recent, and remote memory

Lastly, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with her activities of daily living.[43] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[44] The ALJ highlighted that

---

intact; concentration distracted; judgement and insight poor); AR 796 (mood dysphoric, affect tearful, confused at times); AR 612 (cooperative, poor eye contact, affect sullen with restricted range, alert and fully oriented, insight and judgment poor to fair); AR 798 (neatly groomed, cooperative, good eye contact, mild psychomotor agitation, speech pressured with appropriate volume and insight, insight and judgment fair); AR 862 (affect euthymic, no psychomotor agitation, reports ongoing paranoia and delusions, insight and judgment fair): AR 834 (calm cooperative, reports high anxiety, insight poor, judgment poor to fair); & AR 1029 (Plaintiff alert and oriented, cooperative, intermittent eye contact, speech mildly pressured, insight and judgment fair, but not stable yet to be discharge, still having mood swings and anxiety.); *see also* AR 541 (Plaintiff found lying in chapel at counseling center with no shoes, tearful, and depressed affect.); & AR 708 (Plaintiff reported living with women who treated her like a pet dog and moving to Arkansas for a few days with an abusive man before moving back to Washington.).

[43] AR 25-26.

[44] *Molina*, 674 F.3d at 1113.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

Plaintiff was able to drive and engaged in activities including moving heavy furniture, completing yardwork, riding horses, and cooking and cleaning in lieu of rent.[45] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding considering Plaintiff's episodic bipolar symptoms. These cited activities, which can be achieved in relatively short periods of time, and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[46]

On this record, there is not enough information for the Court to determine whether the ALJ's finding of inconsistency regarding Plaintiff's statements considered Plaintiff's bipolar symptoms. In order for the ALJ to rely on examples of inconsistent symptom severity or treatment, the ALJ is required to explain why the examples of inconsistent mental health treatment or reporting were, in fact, examples of improvement or true discrepancies, rather than the ebb and flow of the claimant's mental impairments.[47] Had the ALJ expressly considered Plaintiff's

---

[45] AR 25-26, 449, 453, & 609.

[46] *Molina*, 674 F.3d at 1112-13.

[47] *Garrison*, 759 F.3d at 1018 (observing that, while the claimant's various conditions and symptoms would come and go, the claimant consistently had diagnoses of bipolar disorder and PTSD, and continually had GAF scores in the range of 50 to 55).

bipolar disorder in this case, the ALJ would have been required to explain why the inconsistencies in question were not attributable to Plaintiff's ongoing mental issues. Thus, the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's reported symptoms.

### B.   Other Steps: The ALJ must reevaluate.

Because the ALJ's weighing of Plaintiff's symptom reports impacted his weighing of the medical evidence, the Court will not analyze Plaintiff's remaining claims. Instead, on remand, when weighing Plaintiff's symptom reports, the ALJ must more meaningfully explain how Plaintiff's reported symptoms, including the waxing and waning of Plaintiff's bipolar symptoms, are inconsistent with the medical record and her activities of daily living.

### C.   Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted.

The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."[48] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[49]

---

[48] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[49] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is

Here, remand for further proceedings, rather than for an award of benefits, is necessary. Even if the ALJ considers Plaintiff's bipolar diagnoses in evaluating the waxing and waning of Plaintiff's symptoms, it is not clear what additional exertional and non-exertional limitations are to be added to the RFC. .

On remand, the ALJ is to reweigh the medical-opinion evidence of Thomas Genthe, Ph.D. and Tae-Im Moon, Ph.D., and Plaintiff's symptom reports. The ALJ is to consider whether the inconsistencies in Plaintiff's reported symptoms are true discrepancies, rather than the waxing and waning of Plaintiff's bipolar disorder.

### V.     Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

---

to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 5th day of October 2020.

                             s/Edward F. Shea
                             EDWARD F. SHEA
                       Senior United States District Judge

Q:\EFS\Civil\2019\19cv5276. Teresa H. SS MSJ.LC02.docx